UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

TAMMY STEWART DIXON                    CIVIL ACTION NO. 10-1490

VERSUS                                 JUDGE ROBERT G. JAMES

PRIMARY HEALTH SERVICES CENTER,        MAG. JUDGE KAREN L. HAYES
ET AL.

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 42] filed by
Defendants Primary Health Services Center ("Primary") and Catherine Tonore ("Tonore")
(collectively, "Defendants").  Defendants claim that they are entitled to judgment as a matter of law
on Plaintiff Tammy Stewart Dixon's ("Dixon") claims of retaliation, hostile work environment, and
discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §
2000e, *et seq*.  For the following reasons, the Motion for Summary Judgment is GRANTED.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Primary is a non-profit, federally qualified health clinic that provides "quality primary and
preventative health services to medically underserved individuals of [N]ortheast Louisiana." [Doc.
No. 43, pg. 2].  Tonore is Primary's Chief Executive Officer.  [*Id*.].

In 2002, Tonore hired Dixon, an African-American female, to work at Primary as a nurse
practitioner.  Dixon received multiple raises and promotions, ultimately attaining the title of Medical
Director in March, 2006.  In November, 2007, Dixon received her final raise, bringing her annual
income to $115,000.  [Doc Nos. 42-6 through 42-13].

The relationship between Dixon and Defendants began to sour after two events.  First, in March, 2008, Dixon accompanied Tonore to a "Medical Director's workshop" in Washington, D.C. [Doc. No. 56-2, pg. 11].  During or after the trip, Dixon questioned Tonore about Primary's use of federal grants based on what she had learned at the workshop.  According to Dixon, her questions angered Tonore.  [*Id.*].  Second, on April 17, 2008, Dixon testified in a deposition during an Occupational Safety and Health Administration ("OSHA") proceeding against Primary.  [Doc. No. 42-20].

In April, 2008, Primary decided that, in order to grow and attract more physicians to its clinic, it would benefit from having a licensed physician filling the role of Medical Director. Primary would create a new position, Nursing Director, to be filled by a nurse practitioner.  On April 24, 2008, Primary's Board of Directors ("the Board") considered and approved these staffing changes.  [Doc. No. 42-15, pg. 2].

On April 29, 2008, Tonore informed Dixon in a memo that her title would change to that of Nursing Director and of the reasons for the change.  [Doc. No. 42-14].  On April 30, 2008, Dixon submitted a letter to Tonore accepting the new title of Nursing Director.  [Doc. No. 42-16].

On May 19, 2008, Tonore informed Dixon of numerous issues regarding her performance and conduct in a Written Counseling Letter and Suspension Without Pay ("Counseling Letter"). [Doc. No. 42-17].  The Counseling Letter addressed Dixon's criticisms of Primary's spending practices to staff members; unprofessional treatment of patients; violation of Primary's Outside Employment Policy by her employment at St. Francis Medical Center ("St. Francis")[1], a competing

---

[1]The Counseling Letter names Convenience Health Clinic as Dixon's outside employer. [Doc. No. 42-17].  The Court takes judicial notice that Convenience Health Clinic is affiliated with St. Francis Medical Center and that the minutes of the Board meeting referred to Dixon's

health care provider; and solicitation of staff members to seek employment with St. Francis.  The letter informed Dixon of corrective measures she should take and that Primary was suspending her without pay for four days.[2]

On June 19, 2008, Dixon filed a Charge of Discrimination with the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC").  In her Charge, Dixon alleged that the Counseling Letter, four-day suspension, and demotion to Nursing Director were the result of "discrimination . . . because of my race, Black, and my sex, female, in violation of Title VII . . . ."  [Doc. No. 42-12, pg. 1].

On June 25, 2008, Tonore informed the Board that Dixon had refused to resign from St. Francis.  Consequently, the Board adopted a motion providing Dixon with the following options: (1) resign from St. Francis; (2) resign from Primary; or (3) retain her employment with St. Francis but relinquish her Nursing Director position at Primary and be paid at a salary commensurate with a non-managerial, nurse practitioner role.  [Doc. No. 42-18].  Dixon chose to remain employed at St. Francis.  Consequently, Primary removed her from the Nursing Director position, retained her as a nurse practitioner, and lowered her salary accordingly.  [Doc. No. 43, pg. 10].

On August 11, 2008, Dixon filed another EEOC Charge.  In the second Charge, Dixon alleged that the Board's ultimatum was retaliation for her earlier Charge and was also based on racial and sexual discrimination.  [Doc. No. 42-12, pg. 2].

On June 29, 2010, the EEOC sent Dixon a right-to-sue letter.  [*Id.*, pg. 3].  On September 24,

---

outside employer as St. Francis Medical Center.  *See* [Doc. No. 42-18, pg. 2].

[2]Along with the signatures of Tonore and a witness, the Counseling Letter has the words "refused to sign" above Dixon's signature block.  [Doc. No. 42-17].

2010, Dixon filed her Complaint [Doc. No. 1] against Defendants, alleging that they retaliated against her for engaging in protected activities, subjected her to a hostile work environment, and discriminated against her on the basis of race and sex.

On March 5, 2012, Defendants filed a Motion for Summary Judgment.  [Doc. No. 42].  On March 27, 2012, Dixon filed a Memorandum in Opposition to Summary Judgment.  [Doc. No. 56]. On April 9, 2012, Defendants filed a Reply to Dixon's Opposition.  [Doc. No. 58-2].

## II.     LAW AND ANALYSIS

### A.     Summary Judgment

Summary judgment "shall [be] grant[ed] ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but does not need to negate the elements of the nonmovants' case.  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477

4

U.S. at 255.

      **B.**    **Retaliation**

     Defendants claim that Dixon cannot prevail on her claims that she suffered retaliation as a result of her inquiries into Primary's spending practices; OSHA testimony; and June 19, 2008 EEOC Charge.

     To establish a *prima facie* case of retaliation, Dixon must show that: (1) she engaged in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).  An employee participates in a protected activity under Title VII when she opposes a practice made an unlawful employment practice by Title VII or charges, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII.  *Crawford v. Metro. Govt. of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009); *see* 42 U.S.C. § 2000e-3(a).

     Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See McCoy*, 492 F.3d at 556.  Thus, if the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)).  The employer's burden is only of production, not persuasion.  If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's reason is not true but is a pretext for the real retaliatory purpose.  *McCoy*, 492 F.3d at 557.  At this point, "the fact-finder must decide whether retaliation was the but-for cause for the employer's action."  *Hernandez*, 670 F.3d at 657 (citation

omitted).

### 1.    Dixon's Inquiries into Primary's Spending Practices

Dixon alleges in Count One of her Complaint that her inquiries "as to why grant funds and other monies were not being applied for their intended purposes" were protected activities under Title VII and that Tonore retaliated by issuing her "a written reprimand."  [Doc. No. 1, pg. 3].[3]

Title VII does not encompass inquiries into an organization's spending practices.  *See* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination on the basis of race, color, religion, sex, or national origin).  Since such inquiries do not qualify as protected activities under Title VII, Dixon fails to make a *prima facie* case of unlawful retaliation.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on Dixon's claim in Count One that Tonore's Counseling Letter constituted unlawful retaliation for her inquiries into Primary's spending practices.

### 2.    Dixon's OSHA Testimony

Dixon alleges in Counts Two and Three of her Complaint that she engaged in a protected activity by testifying in an OSHA proceeding on April 17, 2008, and Defendants retaliated against her by changing her job title to that of Nursing Director (Count Two) and suspending her without pay (Count Three).  [Doc. No. 1, pgs. 3-4].  After Defendants' actions, Dixon filed a complaint with OSHA, alleging that Primary retaliated against her because of her testimony.[4]  On March 19, 2009,

---

[3]Dixon's Complaint and Defendants' Motion for Summary Judgment refer to an April 14, 2008 "written reprimand."  [Doc. Nos. 1, pg. 3; 43, pg. 5].  Although no such document exists in the record, Defendants incorporate a copy of the May 19, 2008 Counseling Letter as an exhibit, and their Memorandum in Support of Motion for Summary Judgment refers to the same.  *See* [Doc. Nos. 42-17; 43, pg. 3].

[4]Defendants' Motion for Summary Judgment states that Dixon filed her discrimination complaint with OSHA in June, 2008. [Doc. No. 43, p. 7].  However, the record contains no evidence of the filing date of the OSHA complaint.  Rather, it only contains the letter from

OSHA dismissed Dixon's complaint.  [Doc. No. 42-21].[5]  Defendants argue that, because testifying in an OSHA proceeding is not a protected activity under Title VII, Counts Two and Three of Dixon's complaint fail to make a *prima facie* case of retaliation.

Title VII does not encompass OSHA violations.  *See* 42 U.S.C. § 2000e-2(a).  Thus, Dixon's OSHA testimony does not qualify as a protected activity for the purposes of Title VII.  *See* § 2000e-3(a)*; Washington v. M. Hanna Constr., Inc.*, 299 Fed. Appx. 399, 401 (5th Cir. 2008) (unpubl.) ("Because Title VII does not encompass violations of OSHA . . . Plaintiff's . . . reporting of [defendant] to authorities for violating OSHA does not qualify as protected activity under Title VII."); *Sanders v. Mount Waste Recycle, Inc.*, 2:11cv1032-WKW, 2012 U.S. Dist. LEXIS 18750, *4-5 (N. D. Ala. Jan. 26, 2012) (Finding that plaintiff alleging Title VII retaliation resulting from reporting OSHA violations had failed to state a claim for which relief may be granted).  The Court finds that Dixon fails to establish a *prima facie* case of retaliation because participation in an OSHA proceeding is not a protected activity under Title VII.  Therefore, the Court GRANTS Defendants' Motion for Summary Judgment on Dixon's claims in Counts Two and Three that her change in job title and suspension without pay constituted unlawful retaliation for her testimony in an OSHA proceeding.

### 3.     Dixon's June 19, 2008 EEOC Charge

Dixon alleges in Count Four of her Complaint that "Defendants further illegally retaliated against [her] by reducing her salary by $30,000, when [Tonore] learned that [Dixon] had filed an

_____

OSHA notifying Dixon of the dismissal of her complaint.

[5]Unlike an EEOC dismissal notifying a party of her right to sue, the dismissal of an OSHA complaint does not result in a private right of action, i.e. an OSHA dismissal is final as to a party's claim of an OSHA violation.  *See* 29 U.S.C. § 660(c)(2)-(3).

EEOC complaint against defendants." [Doc. No. 1, pg. 4]. Specifically, Dixon claims that the Board's June 25, 2008 decision was retaliation for her filing of an EEOC Charge alleging race and sex discrimination on June 19, 2008. *See* [Doc. No. 42-12, pgs. 1-2].[6] Defendants argue that this allegation does not give rise to a *prima facie* case of retaliation because there was no causal connection between Dixon's June 19, 2008 EEOC Charge and her being asked to resign from St. Francis. [Doc. No. 43, pg. 9].

Dixon's filing of the June 19, 2008 EEOC Charge was a protected activity under Title VII. *See* 42 U.S.C. § 2000e-3(a). The Board's decision to remove Dixon from her Nursing Director position and its reduction of her salary to that of a non-managerial nurse practitioner were adverse employment actions. For the purpose of presenting a *prima facie* case, Dixon can also meet her burden of showing a causal connection based on the temporal proximity of less than one week between the filing of her June 19, 2008 EEOC Charge and the Board's June 25, 2008 decision. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)) (noting that temporal proximity between the protected act and adverse employment actions can prove the causation element of a *prima facie* case when they are "very close" in time). Thus, Dixon has established a *prima facie* case of retaliation for the purposes of summary judgment.

Defendants meet their burden of production under *McDonnell Douglas* by providing a legitimate, non-retaliatory reason for the adverse employment actions. The Board removed Dixon as Nursing Director and reduced her salary because her employment with St. Francis contravened

---

[6]Dixon's subsequent EEOC Charge, filed on August 11, 2008, added retaliation for a protected activity to her first EEOC Charge's allegations of race and sex discrimination.

Primary's Outside Employment Policy.  Furthermore, the minutes of the Board meeting show that

the Board limited its discussion of Dixon to the issues, including her outside employment, addressed

in the Counseling Letter, which Dixon received one month *before* she filed her first EEOC Charge.

[Doc. No. 42-18].

      Dixon, on the other hand, fails to meet the ultimate burden of proving that Defendants'

legitimate, non-retaliatory reason was a pretext for a retaliatory purpose.  *See Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("a plaintiff's *prima facie* case, combined with

sufficient evidence to find that the employer's asserted justification is false, may permit the trier of

fact to conclude that the employer unlawfully [retaliated]").   Here, Dixon has presented nothing

more than her subjective belief that she was the victim of retaliation.  Even if genuine, such a belief

is insufficient to carry her case without further evidence of pretext.  *Pennington v. Tex. Dep't of*

*Family & Protective Servs.*, No. 11-50003, 2012 U.S. App. LEXIS 6386, at *19-20 (5th Cir. Mar.

29, 2012) (citing *Sherrod v. Sears, Roebuck & Co.*, 785 F.2d 1312, 1316 (5th Cir. 1986)).  Therefore,

the Court GRANTS Defendants' Motion for Summary Judgment on Dixon's claim that the Board's

decision to remove her as Nursing Director and to reduce her salary constitutes unlawful retaliation

for her June 19, 2008 EEOC Charge.

      **C.**    **Hostile Work Environment**

      In Count Five of her Complaint, Dixon alleges that Defendants created a hostile work

environment because she suffered "harassment from other employees making unsubstantiated

allegations concerning [her] work ethic and other discriminatory behavior." [Doc. No. 1, pg. 4].

However, Dixon's pleadings detail harassment only from her supervisor, Tonore.

      To establish a *prima facie* case of hostile work environment against a supervisor, a plaintiff

must show that she: (1) belongs to a protected class; (2) that she was subjected to unwelcome racial or sexual harassment; (3) that the harassment was based on race or sex; and (4) that the harassment affected a term, condition, or privilege of employment. *See Donaldson v. CDB, Inc.*, No. 08-60666, 2009 U.S. App. LEXIS 15259, *18-19, 335 Fed. Appx. 494, 501 (5th Cir. 2009) (unpubl.) (citing *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007)). "For harassment on the basis of race [or sex] to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993) (internal citations omitted)). Because Title VII is not a general civility code for the American workplace, the alleged "conduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (quoting *Faragher v. City of Boca Raton.*, 524 U.S. 775, 788 (1998)).

As an African-American woman, Dixon is a member of a protected class. In her Opposition, Dixon argues that she was subjected to unwelcome harassment from Tonore in the form of numerous "write-ups" that eventually led to her demotion and reduction in salary. Dixon fails, however, to show that the harassment was based on race or gender.

First, Dixon asserts that these write-ups were prompted by her March, 2008 inquiries into Primary's financial practices and her April, 2008 OSHA testimony. Neither allegation, however, provides evidence that Tonore's write-ups, or subsequent actions, were based on Dixon's gender or race, rather than a response to her workplace behavior and performance.

Second, Dixon cites deposition testimony from a former employee of Primary, Dr. Gary

10

Menefee, who described the work environment created by Tonore as hostile and acrimonious [Doc. No. 56-4, pg. 19] and that she exhibited a "plantation mentality" towards Primary's African-American patients.  [*Id*. at 9].  Nevertheless, Dr. Menefee's testimony fails to support Dixon's claim of harassment because he did not describe one specific instance of racial or sexual harassment towards employees. Thus, the Court finds that Dixon does not establish the third prong of her *prima facie* case of hostile work environment against a supervisor.

Assuming, *arguendo*, that Dixon can establish that she suffered from racial or sexual harassment, she still fails to establish the fourth prong of a *prima facie* case of hostile work environment, i.e., that the harassment was "sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment."  *Harris*, 510 U.S. at 21.  Dixon again cites Dr. Menefee's testimony describing how Tonore's abrasive personality often frustrated Primary's employees.  [Doc. No. 56-4, pgs. 13, 15-17].  Such frustrations are inadequate, without more, to make out a hostile work environment claim under Title VII.  *See Indest* 164 F.3d at 263; *see also Kirk v. City of Tulsa*, No. 02-5138, 2003 U.S. App. LEXIS 14387, at *9-10, 72 Fed. Appx. 747, 751 (10th Cir. 2003) (unpubl.) ("Even though [defendant's] alleged behavior is reprehensible, the correction of indiscriminate boorishness and vulgarity in the workplace is not the function of a Title VII action for a sexually hostile work environment").

The Court finds that Dixon's allegations and Dr. Menefee's deposition testimony are insufficient to present a *prima facie* case of hostile work environment against a supervisor. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment as to Dixon's claim that Defendants created a hostile work environment.

D.      **Discrimination**

In Count Six of her Complaint, Dixon alleges that Defendants "intentionally discriminated against [her] because of her race when they replaced her as medical director with someone outside of her protected class who was treated more favorably than [her] . . . ."  [Doc. No. 1, pg. 4].

To establish a *prima facie* case of discrimination, the plaintiff must establish that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group."  *McCoy*, 492 F.3d at 556.  Allegations of discrimination are also analyzed under the *McDonnell Douglas* burden-shifting framework where the employer has the burden of rebutting a *prima facie* showing of discrimination with a legitimate, nondiscriminatory reason for its employment action.  *Id*. at 557.  If the employer is successful, the plaintiff must prove that the employer's proffered reason is not true but instead is a pretext for the real discriminatory purpose. *Id*.

Defendants do not dispute that, as an African-American woman, Dixon is part of a protected class.  There is no dispute that Dixon was qualified for the position of Medical Director because she held it for approximately six years.  Dixon suffered an adverse employment action because her employer placed her in a position with less seniority.  Finally, Defendants acknowledge that Dixon was replaced as Medical Director by a white male who falls outside of Dixon's protected class. [Doc. No. 43, pg. 12].   Thus, the Court finds that Dixon presents a *prima facie* case of discrimination.

Defendants rebut Dixon's *prima facie* case with a legitimate, nondiscriminatory reason for

replacing Dixon as Medical Director.  Primary contends that it made a business decision to staff the Medical Director position with a licensed physician rather than a nurse practitioner in order to better position Primary for growth by making it a more attractive workplace for physicians.  *See Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) ("Title VII . . . does not protect against unfair business decisions[,] only against decisions motivated by unlawful animus.") (citations omitted).

Dixon does not meet her final burden of proving that Defendants' business decision was a pretext for a discriminatory purpose.  By relying again on Dr. Menefee's testimony as to Tonore's attitudes, Dixon fails to provide any examples of racial animus or discrimination guiding Defendants' employment actions.  *See supra* Part II.C.  Additionally, Dixon, in her own deposition testimony, asserts that Defendants' decision to demote her from the Medical Director position was based on her OSHA testimony and performance-related issues rather than any discriminatory purpose.  [Doc. No. 42-3, pgs. 8-12].  The Court finds that Dixon has failed to meet her burden of proving that Defendants' business decision was motived by racial animus or discrimination.  Therefore, the Court GRANTS Summary Judgment for Defendants as to Dixon's discrimination claim.

### E.    Costs

In their conclusion, Defendants request that the Court dismiss Dixon's lawsuit with prejudice at her costs because she did not prove any of her claims as a matter of law.  [Doc. No. 43, pg. 14].  Costs, other than attorney's fees, "should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).  Therefore, the Court GRANTS costs, other than attorney's fees, to Defendants.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 42] is

13

GRANTED, and Dixon's Complaint [Doc. No. 1] is dismissed WITH PREJUDICE.

Additionally, the Court GRANTS Defendants' request for costs, other than attorney's fees, in accordance with FED. R. CIV. P. 54(d)(1).

MONROE, LOUISIANA, this 1st day of May, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

14